## Rogers *versus* Johnson and Wife.

1. Johnson, residing in Maryland, owned lands in Pennsylvania; they were sold to Rogers in 1834 for taxes; in 1836 before the time for redemption had expired, Johnson called on Rogers to inquire about the land, when Rogers told Johnson, he had bought them to save them for the family, and signed a paper agreeing to reconvey on being paid the costs with 25 per cent., &c., at any time when Johnson should require. This was evidence of a redemption outside of the treasurer.

2. It was a redemption with condition of repayment which was necessary to give it effect.

3. The taxes, costs, and 25 per cent. did not represent the price of the land, but only Rogers's inchoate title; and Johnson, the owner of the land, having been prevented from redeeming by Rogers's voluntary agreement, was not bound to pay for his own title.

4. Rogers was estopped from claiming the land after the time for redemption had passed.

5. Rogers having occupied and used the land and received profits from it more than the amount due him for taxes, &c., no payment of them to him was necessary to enable him to recover.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* Of October and November Term 1871, No. 185.

This was an action of ejectment, brought April 14th 1866, by Worthington R. Johnson and Anna his wife, against Daniel Rogers, for an undivided half of two tracts of land, stated in the writ to contain respectively 400 and $428\frac{1}{2}$ acres.

The case had been tried December 1868, a verdict rendered for the plaintiff and the judgment thereon reversed by the Supreme Court (17 P. F. Smith 43).

These tracts belonged originally to Governor Thomas Johnson of Maryland, who died in 1819, having devised them to his son Joshua Johnson and his grandson Thomas J. Graham; Mrs. Anna Johnson, plaintiff, is a daughter of Graham, and owns his title.

The lands were sold in June 1834 for taxes of 1831 and 1832, and a deed for them from the treasurer to Daniel Rogers, the defendant, was made June 10th 1834, and acknowledged September 12th. 1834.

On the trial, September 12th 1871, before Gilmore, P. J., the parties respectively gave in evidence the foregoing facts.

In rebuttal the plaintiff called Thomas Hammond, who testified : " I came to this county in 1817 or 1818, to attend to these lands of Governor Johnson, to pay taxes; we settled at that time all the taxes; had letters of introduction to Isaac Meason; I met Daniel Rogers; went with Mr. Rogers to examine the lands, and when I came back I gave a description of the lands. I visited this county in 1836, in company with Joshua Johnson; we came to the county to settle the taxes; we called on Rogers; he said to Joshua Johnson, I bought a couple of your tracts to save them

for the family; his reason for buying them, he said, was to save them for the family; he was willing at any time, he said, to re-convey, on being refunded what he had paid; that was the sub-stance of what he said; that agreement was reduced to writing—saying if there had been a magistrate there he would have con-veyed at once; Joshua Johnson said to me, 'We will be out again, and it will answer just as well then;' we were all together when this was said; Rogers was willing to convey if there had been a magistrate; I suggested that there should be a writing; Mr. Rogers then took up his pen and wrote as you see, and I added a little to it before it was signed (paper shown).  This is the writing, signed by Mr. Rogers; I witnessed it; our business was to pay the taxes, and if sold, to redeem; we told Mr. Rogers that we had come to pay the taxes and redeem any land sold; Mr. Rogers said he had bought two tracts in for the family, and was willing to give them up, on paying taxes, &c.  We would have redeemed if Mr. Rogers had not agreed to let us have the land. I was in this county again in 1865; I went up to Bannings' where Mr. Rogers lived; I left the two ladies, Mrs. Graham and Mrs. Johnson, at Connellsville; I went to Bannings' to see Mr. Rogers; this was done at their request; I found Mr. Rogers at Bannings'; he did not recognise me at first; told him I had come to settle for the two tracts of land he had bought, which belonged to the John-sons,—I came to pay whatever was against them; I then said I had a written statement from him about it; he said he didn't remember it; I then took the paper out of my pocket and handed it to him, and as I handed it to him, he opened it; he said he remembered it; said he knew all about it; then he went on and spoke of all the different agents Governor Johnson had sent out there to look after his business; said Davis was a more efficient agent in selling land, and he had assisted him to sell; I told him I had come out to pay the whole; says he, I have exercised owner-ship over them; he said he had sold $1900 of bark off one of the tracts; I said that was all right, and if it was not emough I came prepared to pay any balance; he said he would write in a few weeks and send on a statement; it would take some time to make out the statement; never got a letter from him, although I wrote two or three times; the last conversation was when we were going down by ourselves to the cars; I had money with me to pay."

The writing spoken of by witness was as follows:—" This is to certify that I will reconvey to Mr. Joshua Johnson, the title for two tracts of land which I purchased at commissioners' sale on the 10th of June 1834—one of 428 acres and 406—on his repay-ing the money and commission which I had paid, at any time he may require me so to do.  Witness my hand and seal the 17th day of April 1836.

Witness: THOS. HAMMOND.          DANIEL ROGERS. [SEAL.]"

[Rogers *v.* Johnson.]

Worthington R. Johnson, plaintiff, testified : "I called to see Mr. Rogers in October 1865 about these lands ; I found him some 20 miles below Connellsville, at Bannings' ; I offered to pay $100 ; Banning told his father-in-law not to accept ; he shook his hand after them, and did not take the money ; did not know of our title to the land till 1854."

David Mahaney testified : "I superintended a saw-mill for Torrence & North.   What I sawed would be equal to $1000 ; that is the timber on the ground."

Jacob May testified : "I have cut a good deal of timber off these lands.   I peeled bark on it.   I peeled not less than 500 cords.

The vital question in the case is contained in the plaintiff's sixth point, which with its answer is as follows :—

Point : That if the jury believe from the evidence that the defendant admitted in 1836, when called on in reference to these lands, that he had bought them in to save them for the owners ; that all he wanted was the money he had laid out in the purchase ; that he then agreed to accept said money, and surrender the land to the owners ; that this was while the plaintiffs had the right to redeem from the treasurer, and that they failed to do so on the faith of the plaintiffs' assurances and agreement ; that the arrangement made with the defendant, was in fact a redemption so far as concerned the defendant, and all that the defendant was entitled to demand thereafter, was the money he had agreed to take, and if the money has been received by the defendant, the plaintiffs are entitled to recover.

Answer : "We answer this in the affirmative.   The agreement of Rogers in writing of the 17th of April 1836, and the acceptance of the same by Joshua Johnson, was virtually the same as if Johnson had given his obligation for the taxes paid and commission, which would amount to a virtual redemption, so that the title never did become complete in Rogers, and if he has received from the land his taxes, interest and commission in full, plaintiffs will be entitled to recover."

The verdict was for the plaintiffs.   The defendant removed the case to the Supreme Court, and, besides numerous other assignments of errors, specified the answer to the 6th point.

*D. Kaine*, for plaintiff in error.—The tender of taxes and 25 per cent. to Rogers would not have been a redemption, although it would if made to the treasurer ; if accepted by Rogers it would have been a redemption : Dubois *v.* Hepburn, 10 Pet. (U. S. R.) 1 ;  Coxe *v.* Sartwell, 9 Harris 480.   If Rogers had been bound to convey, Johnson should have complied in a reasonable time ; Pitts. and C. Railroad *v.* Byers, 8 Casey 22.   There being no

[Rogers v. Johnson.]

mutuality, the agreement was not binding: Wilson v. Clarke, 1 W. & S. 554; Parrish v. Koons, 1 Pars. R. 79.

C. E. Boyle, for defendants in error.—An owner may redeem from purchaser at tax sale directly: Coxe v. Wolcott, 3 Casey 154; Steiner v. Coxe, 4 Barr 13; Lloyd v. Lynch, 4 Casey 419. The law in relation to redemption should be construed liberally towards the owner: Gault's Appeal, 9 Casey 94. If the paper was construed a sale, it would be sufficient under the Statute of Frauds, although signed only by the vendor: Lowry v. Mehaffy, 10 Watts 387; McFarson's Appeal, 1 Jones 508. Rogers had no vested title at the execution of the paper: Shalemiller v. Mc-Carty, 5 P. F. Smith 188. Rogers by his agreement having prevented Johnson from redeeming, is a trustee: Sheriff v. Neal, 6 Watts 534; Kerr v. Gilmore, Id. 407; Hiester v. Madeira, 3 W. & S. 384; Houser v. Lamont, 5 P. F. Smith 311; Horn v. Pattison, 1 Grant 304.

The opinion of the court was delivered, June 9th 1872, by

AGNEW, J.—Could we regard the sealed writing executed by Daniel Rogers, of the 17th of April 1836, as a mere agreement for the sale and conveyance of the land referred to in it to Joshua Johnson, it might be subject to the objection made to its present execution by the plaintiff in error. But this is not its true character. It is to be interpreted and enforced according to the circumstances attending its execution. Rogers had purchased Johnson's land at treasurer's sale on the 10th of June 1834, and was himself the first to inform Johnson of the fact in 1836, when on a visit to Rogers, saying to him, "I have bought a couple of your tracts of land to save them for the family." He expressed his willingness to reconvey them at any time on being refunded what he had paid. In consequence of this the writing in question was executed, Rogers saying if there were a magistrate there to take the acknowledgment he would have conveyed at once. Johnson was a resident of Maryland, and told Rogers his business out there was to pay taxes and redeem any land that might be sold; and but for this agreement of Rogers, would have redeemed the land. By the terms of the writing Rogers was to convey *at any time Johnson might require him to do so*. The governing fact in the case is, that the time of redemption had not passed, and Rogers had no absolute title to the land. His act therefore was not an agreement for the transmission of an estate, the sale of which depended on his own will alone, for he could not prevent his title, such as it was, from being destroyed by the redemption of Johnson. The agreement, therefore, was nothing more than the evidence of a redemption outside of the treasurer's office, where at law it would have been made. Still by its own terms

[Rogers *v.* Johnson.]

it was a redemption coupled with a condition which must be performed to make it effective; and this it is which resembles it to a bargain and sale in some aspects, and leads to the controversy about its character. The payment of the money and commission was essential to the final effect of the instrument. But it must be remembered that the taxes and costs and twenty-five per cent., which are evidently the money and commission meant by the writing, do not represent the price of the land, but only that of Rogers's inchoate title.

The land really belonged to Johnson, who being prevented from redeeming it by the voluntary act and agreement of Rogers, was under no obligation to pay for his own title. Rogers is estopped from claiming as a vendor of the land itself after the time of redemption had passed. If, after the lapse of the term for redemption, he could claim to hold an absolute title by his treasurer's deeds, the agreement would be nugatory, and he would take a title by his own prevention, which the law would not tolerate. Hence, the principles which the plaintiff in error would apply to the case as one of ordinary bargain and sale, to be affected by delay in equity, or one wanting in mutuality, because the paper was not executed by Johnson, do not govern the case. The fact is, if Rogers can hold the land by his deeds, he has Johnson's land without paying for it, and by his own prevention of a redemption, which would have been made in due season, and would have avoided his title. The only question, therefore, which can arise on this agreement is that of non-payment of the taxes and percentage. Fortunately for this case that question does not embarrass it, for when Mr. Hammond, the agent of the Johnsons, came to see Rogers about the land in 1865, the latter recognised his agreement, said he had sold $1900 worth of bark from the land, and on being told by the agent that that was all right, and if it was not enough he came prepared to pay any balance, he said he would write in a few weeks and send on a statement. Besides this, there was evidence that he had used the land from an early day before 1840 for pasture, and had in addition gotten from it about $1000 worth of sawed timber. In the mean time he had never denied his liability, or called on Johnson to make payment of the taxes and percentage. Under these circumstances it would be a long stretch of authority to treat the writing as obsolete, and the title as fully vested in Rogers. What has been said covers all the errors assigned, and without discussing them in detail, we may say we discover no error, and the

Judgment is affirmed.